Gregory K. Nelson, Esq., CSB No. 203029
Email: nelson@weeksnelson.com
Chandler G. Weeks, Esq., CSB No. 245503
Email: cgw@weeksnelson.com
WEEKS NELSON
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
Telephone: (858) 794-2140
Fax: (858) 794-2141
Email: Office@weeksnelson.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| **RED.COM, INC., dba RED DIGITAL CINEMA**, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**JINNI TECH, LTD.,** a United Kingdom corporation, and **BRUCE ROYCE**, an individual,<br><br>Defendants. | Case No.: 8:17-cv-382<br><br>COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, UNFAIR COMPETITION, FALSE ADVERTISING, UNJUST ENRICHMENT AND BREACH OF CONTRACT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Red.com, Inc. dba Red Digital Cinema (hereinafter referred to as "RED") hereby complains of Jinni Tech, Ltd. (hereinafter referred to as "Jinni" or "Defendant") and Bruce Royce (hereinafter referred to as "Royce" or "Defendant") and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction over this action is founded upon 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

2. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b). Defendant Jinni conducts business in California and within this judicial district and have made, used, offered for sale and/or sold accused products in this judicial district. Defendant Royce consented to the exclusive jurisdiction of this Court related to claims set forth herein.

## THE PARTIES

3. Red.com, Inc. is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at 34 Parker, Irvine, California 92618, and doing business within this judicial district.

4. RED is informed and believes, and thereupon alleges that Defendant Jinni Tech, Ltd. is a United Kingdom corporation with its registered business location at3429, 27 Old Gloucester Street, London, WCIN 3AX, United Kingdom. RED is informed and believes, and thereupon alleges that Defendant also does business at Building 3, 566 Chiswick High Road, Chiswick, London, W4 5YA, United Kingdom, and can be contacted at +44.447979480583 and brucerroyce@gmail.com. Further, RED is informed and believes, and thereupon alleges, that Defendant markets, advertises, offers to sell and sells products globally, including in California and within this judicial district, at www.jinnimag.com. RED is informed and believes, and thereupon alleges, that Defendant Jinni USA Inc. has

made, used, offered to sell, advertised and/or sold products, including the accused products identified below, directly and in the stream of commerce knowing such products would be sold in California and in this judicial district.

5. RED is informed and believes, and thereupon alleges, that Defendant Bruce Royce is an individual residing in the United Kingdom. Royce is the purchaser and owner of at least one RED camera. As such, Royce agreed to the Terms & Conditions of Sale that accompany all purchases of RED products, and to which Royce agreed and consented. The Terms & Conditions of Sale specifically indicates that "[e]xclusive jurisdiction for any dispute arising from the terms and conditions of this Agreement (meaning the Terms & Conditions of Sale) shall be Orange County, California, and both Buyer and RED waive all rights to have a dispute brought elsewhere. Royce violated the Terms & Conditions of Sale, and RED asserts claims arising out of that breach, as set forth herein.

## ALTER EGO

6. RED is informed and believes, and thereupon alleges, that Defendant Royce is the alter ego of Defendant Jinni. RED is informed and believes, and thereupon alleges, that the corporate status of the Jinni is a fraud and sham to protect Royce from liability. Accordingly, to the extent that any corporate entity actually exists in any form, RED contends that the corporate veil should be pierced and Royce be held responsible for any and all liabilities arising out of this action.

7. RED is informed and believes, and thereupon alleges, that Royce commingled corporate funds with his personal assets. RED is informed and believes, and thereupon alleges, that Royce and Jinni commingled funds and resources. RED is informed and believes, and thereupon alleges, that Royce raided corporate funds of Jinni for personal use. Accordingly, where Royce has personally disregarded the corporate entity and have not maintained separate corporate accounts, the court should likewise disregard the corporate entity.

8. Further, RED is informed and believes, and thereupon alleges, that Royce disregarded the form of the corporate Defendant Jinni. Specific facts regarding the disregard of the corporate form are largely in control of the Defendants. At this time, however, RED is informed and believes, and thereupon alleges, that Royce has not upheld corporate responsibilities, held regular manager meetings, kept corporate minutes, followed the operating agreement, or otherwise fulfilled corporate responsibilities. Moreover, RED is informed and believes, and thereupon alleges, that Royce has dominated and controlled the Jinni to such an extent that the individuality and separateness of the corporations has ceased.

9. On information and belief, RED contends that injustice would occur if the corporate veil is not pierced because Royce apparently undercapitalized Jinni leaving it unprepared to satisfy corporate liabilities, such as damages from this action. Allowing Royce to remain distinct from each other would result in inequity.

## FACTUAL BACKGROUND

10. Since at least 2005, RED has been and continues to be actively engaged in the design, development, manufacture and sale of high performance digital still and motion cinematography cameras, video equipment and accessories, digital editing software, video players and generally, imaging format technology used in the dissemination, broadcast, or transmission of video. Since the introduction of its revolutionary RED ONE® camera, RED's products have been used to film blockbuster movies, as well as many other movies and television series. The RED cameras and products have revamped the movie making process and industry.

11. Along with its industry leading cameras, RED makes and sells peripherals and accessories for its cameras. One of the accessories is a recording media called RED Mini-Mag, which is a solid state drive and comes in various recording sizes. The RED Mini-Mag was developed by RED and underwent

significant and expensive design and testing to assure performance. All manufactured RED Mini-Mags are also quality tested to confirm their performance.

12. Because RED cameras are used on expensive, high-budget productions, it is critical that its equipment not fail. For example, if a recording media fails, footage from the shoot would be lost, costing the production potentially millions of dollars. Moreover, if digital media fails in its recordings, the loss it likely to be attributed to use of the camera, rather than the specific media. So, RED undertakes to ensure that only authorized third party accessories and media are used with its cameras, so that its customers are not misled or dissatisfied with their experience shooting with RED cameras.

**The Asserted Patents**

13. RED is the owner by assignment of U.S. Patent Application Serial No. 15/293,193, which will issue on March 14, 2017 as U.S. Patent No. 9,596,385 ("'385 Patent"), describing and claiming an "Electronics Apparatus." A true and correct copy of the published application of the '385 patent is attached hereto as Exhibit 1.

**The Patented Technology**

14. The '385 patent describes, among other things, apparatuses and methods for receiving and storing compressed mosaiced image data. For example, an apparatus can receive and store compressed mosaiced image data at a frame rate of at least 23 frames per second. RED's memory devices, including RED's MINI-MAG, REDMAG and RED CF memory devices, which operate with various cameras provided by RED, are covered by one or more claims of the '385 patent.

**Defendants' Product**

15. RED is informed and believes, and thereupon alleges, that Defendants make, use, import, offer to sell, and/or sell in the United States, and in this judicial district, memory devices that unlawfully embody one or more claims of the '385 patent. These memory devices are marketed and sold under the name "JinniMag." Jinni Tech has stated that the JinniMag memories are compatible with certain cameras, including cameras manufactured and sold by RED. A representative picture of a JinniMag device follows:




**False Advertising**

16. Defendants, jointly and severally, have made several statements in advertising and marketing that are not factually accurate.

17. On its website, Jinni states: "JinniMag is a high quality, high capacity, third party RED® media that is ***fully compatible with RED® Mini-Mag®*** but comes for a fraction of the price of its RED® counterpart and ***exceeds its capabilities in many aspects***." Jinni also declares on its website the following about its JinniMag product: "***100 per cent compatibility*** means not change in your work flow,

whatsoever!" Reinforcing this, Jinni states: "JinniMag is ***fully compatible*** with whatever camera that works with RED® Mini-Mag."

18. These statements are false. The JinniMag device is not "fully compatible" or "100% compatible" with the RED Mini-Mag, and it certainly does not exceed the capabilities "in many aspects." In fact, with regard to one of the most critical aspects, it is a failure, and far inferior to the RED Mini-Mag. Specifically, the JinniMag does not sustain write performance across the entire SSD due to its Dynamic Write Acceleration feature. In particular, the JinniMag 480GB drive drops frames and produces an error at approximately 60% of full. Even at restart thereafter, the SSD appears to drop frames within another 10GB, and occur even after reducing the data rate, which is not desirable in any production. The following test data confirms the actual failed writing of the JinniMag 480GB drive.



RECORD ERROR AFTER ~60% FULL






```
[0:17:17:197] (52%/41%)   : min fclose time =   0.821 ms
[0:17:17:197] (52%/41%)   : max fclose time =   5.121 ms
[0:17:17:197] (52%/41%)   : avg flush time  =   3.831 ms
[0:17:17:197] (52%/41%)   : min flush time  =   0.688 ms
[0:17:17:197] (52%/41%)   : max flush time  =   9.643 ms
[0:17:17:197] (52%/41%)   : avg write rate  = 423.8 MiB/s
[0:17:17:201] (52%/41%)   : -------------------
[0:17:17:205] (52%/41%)   : Total video bytes processed = 251.87 GiB
[0:17:17:212] (52%/41%)   : Elapsed time = 877.9 seconds
[0:17:17:216] (52%/41%)   : I/O processing rate = 293.2 MiB/s
[0:17:17:222] (57%/43%)   : -------------------
[0:17:17:346] (51%/44%)   : Video frame 72704 received
[0:17:30:055] (46%/34%)   : Video frame 73728 received
[0:17:30:084] (46%/34%) E: Recorder2Object::WriteImageBlockToSATA recorder2.cpp 1269: dropped frame 73731
[0:17:30:093] (46%/34%) E: Recorder2Object::WriteImageBlockToSATA recorder2.cpp 1269: dropped frame 73732
:
[0:17:32:176] (93%/60%) E: Recorder2Object::WriteImageBlockToSATA recorder2.cpp 1269: dropped frame 73830
[0:17:32:181] (93%/60%) E: Recorder2Object::WriteImageBlockToSATA recorder2.cpp 1269: dropped frame 73831
[0:17:32:183] (93%/60%)   : recorder state RECORDER2_STATE_ENCODER_STOPPING
[0:17:32:184] (93%/60%)   : encoder stopped receiving from isp mask 0x2
[0:17:32:184] (93%/60%)   : SYSTEM STATE 2: FINALIZE
[0:17:32:238] (93%/60%) E: Recorder2Object::WriteImageBlockToSATA recorder2.cpp 1269: dropped frame 73832
[0:17:32:238] (93%/60%)   : encoder stopped receiving from IOB
:
[0:17:34:883] (83%/54%) E: RecordManager::PrintRecordInfo record_manager.cpp 488: Total recording errors   : 102
[0:17:34:939] (54%/57%)   : cdb2: MEDIA_CAMERA_CLIPNAME (STRING) set to [A007_C003_0111IH]
[0:17:34:942] (54%/57%)   : cdb2: PROJINFO_TAKE (INT32) set to [14]
[0:17:35:211] (89%/65%)   : Total Ticks for FLUT Calc: 439
[0:17:35:211] (89%/65%) S: matrix upload start...
:
[0:17:35:533] (48%/71%)   :
[0:17:35:535] (48%/71%)   : SYSTEM STATE 2: REAPPLY_MONITOR_MAPPINGS
[0:17:35:541] (48%/71%)   : SYSTEM STATE 2: READY_TO_RECORD
[0:17:36:060] (48%/71%)   : Notification: 0x20 'Error: 0x00000020' 'Please save log and send to RED support.'
[0:17:36:061] (48%/71%)   : cal state machine state: DISABLED -> IDLE
[0:17:36:062] (48%/71%)   : cal state machine state: IDLE -> DISABLED
[0:17:36:070] (48%/71%)   : Updating preset: Motion, force = 1
[0:17:36:172] (96%/77%)   : SYSTEM STATE 2: SYSTEM_ERROR
[0:59:58:825] (22%/25%)   : Notification: 0x51 '' 'Save UI Screenshot to Media'
[0:59:58:831] (22%/25%)   : 23:45:36  01/11/2000  WEDNESDAY
[0:59:58:836] (22%/25%)   : creating screenshot: \20000111_234536_SM.bmp
[0:59:58:995] (33%/26%)   : creating screenshot: \20000111_234536_LCD.bmp
```

19. Defendants also market and advertise the superiority of the JinniMag stating that it handles "the very demanding data rate of the REDCODE RAW files." Jinni also states that the JinniMag product "uses the best components in terms of speed" and is "blazing fast." In fact, the JinniMag cannot effectively handle REDCODE files and is not blazing fast, as set forth above. The drive crashes at high record speeds, apparently losing data.

20. Jinni is marketing and advertising its products as being made in the United Kingdom, implying a greater quality than other products. On its website, Defendant Jinni declares of its products: "***Quality product made in the United Kingdom!***" However, in much smaller (barely legible print) it also adds: "Industrial design, electronic concepts and designs, PCB fabrication, PCB Assembly, Natural-Cool body design and manufacturing, toolmaking and machining, programming, finishing, plating and anodizing, painting and printing and product assembly done in the UK. Materials and electronic components sourced from the UK Suppliers. ***SSD cells and other components imported.***" By its own admission, Jinni admits that its products are not actually "made in the United Kingdom." In fact, the JinniMag

480GB drive incorporate Crucial MX200 mSATA SSD 500GB cards, which are made in Singapore.

## Trademark Infringement

21. Defendants are engaged in unlawful comparative advertising that constitutes trademark infringement. In much of Jinni's marketing and advertising, RED cameras and equipment are highlighted, impressing on the consumer that there is an actual endorsement or affiliation of the JinniMag product by RED. Even though Defendants attempt to disclaim this association with a notation in small print at the bottom of the page, the marketing that catches the eye of a consumer impresses in the minds of consumers a connection between JinniMag and RED.

22. RED is the owner of U.S. Registered Trademark No. 3,732,638 for "RED" for "electronic data storage devices" in Class 9. The registration issued on December 29, 209. A true and correct copy of this trademark registration is attached hereto and incorporated by reference as Exhibit 2.

23. RED is the owner of U.S. Registered Trademark No. 5,009,473 for "RED RAVEN" for "digital still and motion cameras; digital cinema camera systems and accessories, sold individually or as a unit, comprised of cameras, camera lenses, flash memory cards, electronic memories, hard drives, batteries, recording modules, processing modules, electronic input/output modules, video monitors and flat panel display screens, all for use in the acquisition, creation, storage, delivery, manipulation, recording, playback or viewing of video, film, photographs, and multimedia data; modular digital camera systems and accessories, sold individually or as a unit, comprised of cameras, camera lenses, electronic viewfinders, power modules, processing modules, imaging modules, recording modules, flash memory cards, electronic memories, hard drives for video recorders, video monitors and flat panel display screens, all for use in the acquisition, creation, storage, delivery, manipulation, recording, playback or viewing of video, film, photographs, and

multimedia data; camera lenses; digital image sensors for digital still and motion cameras; electronic input/output modules for digital camera systems data transmission; batteries; computer software programs for the capture, processing and editing of audio, still images and moving pictures into an electronic delivery format; software for use in the field of digital still or motion picture filming and editing, including color correction, color grading, color scaling, and color balance" all in Class 9. The registration issued on July 26, 2016. A true and correct copy of this trademark registration is attached hereto and incorporated as Exhibit 3.

24. RED is the owner of U.S. Registered Trademark No. 4,645,757 for "RED mini-mag" for "flash memory card readers" in Class 9. The registration issued on November 25, 2014. A true and correct copy of this trademark registration is attached hereto and incorporated by reference as Exhibit 4.

25. RED is the owner of U.S. Registered Trademark No. 4,656,645 for "RED MINI-MAG" for "electronic media storage data devices, namely, solid state drives, flash memory cars, hard disk drives, compact flash memory cards, blank USB flash drives, RAM (random access memory) cards" in Class 9. The registration issued on December 16, 2014. A true and correct copy of this trademark registration is attached hereto and incorporated by reference as Exhibit 5.

26. RED's products and their connection with the RED trademarks have become, through public acceptance, a distinctive designation of the source of origin of goods offered by RED and an asset of incalculable value as a symbol of RED and its quality goods and good will. Since at least 2005, RED has expended money in the promotion of its company and the RED products, including the RED RAVEN camera. As a result of these promotional efforts, both the trademarks above have become and are now known to be connected to the marks and are recognized in this district and elsewhere as emanating from and authorized by RED.

27. RED's "RED," "RED MINI-MAG" and "RED RAVEN" trademarks have been in continuous use and have never been abandoned, and are associated with

the good will of the business of RED. RED continues to preserve and maintain its rights with respect to these trademarks.

28. RED is informed and believes, and thereupon alleges, that Defendant Jinni is the making, advertising, and/or selling its own products using the RED, RED MINI-MAG and RED RAVEN marks in prominent advertising, likelihood of confusion.

29. RED is informed and believes, and thereon alleges, that Defendant and its agents, employees, and servants have advertised and sold products bearing the trademarks referred to above, which advertisements and products sold are confusingly similar given their purported integration with RED camera systems, the prominent images in conjunction with RED camera systems, and are, therefore, an infringement of RED's above described trademarks.

30. Jinni’s marketing and advertising have exacerbated the likelihood of confusion between the RED and JinniMag products by highlighting the RED name in virtually all advertising and marketing and highlighting the RED RAVEN as compatible with the JinniMag device, all while apparently attempting to capitalize on the goodwill and reputation associated with RED. RED is informed and believes, and thereupon alleges, that the marketing and sale of the JinniMag accessories by Jinni will erode RED’s incalculable goodwill associated with its trademarks, as asserted in this complaint.



31. Additionally, Defendant Jinni is using "RED" and "RED MINI-MAG" repeatedly in its metatags on its website, without authority or approval from RED. This usage constitutes initial interest confusion, as web crawlers draw in consumers searching for terms such as "red mini-mag" and "red," which Defendant clearly intends to highlight and emphasize with its excessive use in metatags and overall marketing on the website. This confusion is intended to draw internet traffic to Defendant's website. Defendant benefits from this traffic by way of additional visibility, affiliation with RED, and sales of Defendant's goods.




32. Defendants' use in commerce of "RED," "RED MINI-MAG," and "RED RAVEN," to bolster advertising and marketing, constitutes trademark infringement, false designation of origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendant's goods are authorized or affiliated with RED. RED further contends that Defendant's unauthorized use is likely to cause confusion in the marketplace as to the source of origin of its goods, and its affiliation or endorsement by RED.

33. Additionally, Defendants spoof authentic RED Mini-Mags in order to integrate with and operate on RED cameras. When the JinniMag device is inserted into a RED camera, it pretends to be a RED Mini-Mag, as shown below. In particular, the JinniMag 480GB tells the camera that it is in fact a RED 512GB drive, with an authentic RED serial number. This deceptive practice adds to the confusion, both for the camera and the consumer, who is already deceived to believe that the JinniMag is compatible with the RED Mini-Mag.

JINNIMAG 480 GIGA




34. RED is informed and believes, and thereupon alleges, that Defendant is on actual notice of RED's proprietary rights in its trademarks based on Defendant’s involvement in the same industry. Further, Defendant has received constructive notice of RED's trademarks as RED caused the trademarks to be placed plainly on the advertisements and/or packaging. Despite this actual and constructive knowledge, Defendant has continued to infringe RED's trademark rights. On information and belief, Defendant’s infringement has been willful and wanton.

35. RED is further informed and believes and thereupon alleges that the presence of Defendant’s products in the marketplace using the accused marks damages the value of RED's exclusive rights. The presence of the products in the marketplace while used in repeated and heavy conjunction and affiliation with RED trademarks is likely to diminish the apparent exclusivity of the genuine RED products thereby dissuading potential customers who otherwise would have sought RED products. Upon information and belief, RED alleges that such deception has misled and continues to mislead and confuse many of the purchasers to buy the

products sold by Defendants and/or has misled non-purchasers to believe the products emanate from or are authorized by RED.

36. RED is informed and believes and thereupon alleges that the sale of Defendants' products in conjunction with RED's trademarks will result in lost sales, reduce the business and profit of RED, and will greatly injure the general reputation of RED, all to RED's damage in an amount not yet fully determined.

37. The exact amount of profits realized by Defendants as a result of their infringing activities, are presently unknown to RED, as is the exact amount of damages suffered by RED as a result of said activities. These profits and damages cannot be accurately ascertained without an accounting. Further, Defendant's actions are irreparably injuring RED and will continue until enjoined by this Court.

**<u>Contractual Obligations and Breach</u>**

38. Defendant Royce is a RED customer, having purchased at least one RED camera. As part of RED's Terms & Conditions of Sale, which all purchasers must review and accept prior to purchase, Royce agreed to the following term:

> "Buyer will not cause or permit the modification or reverse engineering of file formats, tools, or image processing of RED products without express written consent form RED. Buyer will not develop tools from RED products or use non-RED approved tools, products or software with RED products without express written consent from RED. Buyer will not cause or permit any reverse engineering or RED products."

39. Royce breached this term of the agreement. RED is informed and believes, and thereupon alleges, that Royce facilitated and/or was instrumental in developing the JinniMag device and enabling it to engage with RED cameras. RED is further informed and believes, and thereupon alleges, that Royce spoofed strings of code, copied code, or otherwise modified tools and products to record with the RED cameras, all without any authority or approval by RED.

40. As a direct result of Royce's actions, RED has been damaged in an amount to be determined at trial.

**FIRST CLAIM FOR RELIEF**
**Patent Infringement**

41. RED repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 40 of this Complaint.

42. This is a claim for patent infringement against Defendants, and arises under 35 U.S.C. § 271 et seq.

43. RED is informed and believes, and thereupon alleges, that Defendants have in the past infringed and are currently infringing the '385 patent, in violation of 35 U.S.C. § 271(a) by making, using, importing, offering to sell and selling in the United States the JinniMag memory devices.

44. RED is informed and believes, and thereupon alleges, that Defendants have in the past infringed and are currently infringing the '385 patent in violation of 35 U.S.C. § 271(b) by marketing and selling the JinniMag memory devices, knowing and intending that such memory devices would be used by Defendants' customers and end users in a manner that infringes the '385 patent. To that end, Defendants provide instructions and teachings to their customers and end users so that the JinniMag memory devices can be used to infringe the '385 patent. As a result, Defendants' JinniMag memory devices have been used by their customers and end users in a manner that directly infringes the '385 patent. RED is informed and believes, and thereupon alleges, that Defendants are aware of the '385 patent, at least by the service of this Complaint, and intend that their customers and end users directly infringe the '385 patent.

45. RED is informed and believes, and thereupon alleges, that Defendants have in the past infringed and are currently infringing the '385 patent in violation of 35 U.S.C. § 271(c) because, among other things, Defendants have offered to sell and sold within the United States the JinniMag memory devices, which are not staple

articles or commodities of commerce suitable for substantial non-infringing use, which constitute a material part of the patented inventions, and which are known by Defendants to be especially made or especially adapted for use in an infringement of the ‘385 patent. As a result, Defendants’ JinniMag memory devices have been used by their customers and end users to directly infringe the ‘385 patent.

46. For example, RED is informed and believes, and thereupon alleges, that Defendants have in the past infringed and are currently infringing, both directly and indirectly and both literally and under the doctrine of equivalents, at least Claim 7 of the ‘385 patent because Defendants’ JinniMag memory devices include all of the claim elements. The JinniMag memory devices have a housing configured to couple to a motion video imaging device (e.g., a RED camera) so that the housing is supported by the motion video imaging device. Moreover, the JinniMag devices have a communication interface supported by the housing of the JinniMag memory device configured to receive compressed mosaiced image data at a frame rate of at least about 23 frames per second from the motion video imaging device (e.g., a RED camera). For example, RED cameras compatible with the JinniMag devices can output such image data to the JinniMag devices. The communication interface of the JinniMag can output the compressed mosaiced image data to the motion video imaging device or another electronic device, the compressed mosaiced image data being able to be decompressed and demosaiced as part of an image processing to generate video output having a resolution per frame of at least 4k. The mosaiced image data used to generate the compressed mosaiced image data is generated by an image sensor of the motion video imaging device (e.g., a RED camera) at a frame rate of at least about 23 frames per second for a plurality of motion video image frames where the mosaiced image data has a resolution per frame of at least 4k. The mosaiced image data comprises first pixel data corresponding to first pixels of the image sensor and that represents light having a green color, and second pixel data corresponding to second pixels of the image senor and that represents light having a

red color or a blue color, and the compressed mosaiced image data is generated from the mosaiced image data by the motion video imaging device (e.g., a RED camera) at least by: pre-emphasizing the mosaiced image data, for each second pixel of a plurality of the second pixels, transforming the mosaiced image data at least by: calculating an average of values of the first pixel data corresponding to four of the first pixels that are adjacent to the second pixel, and subtracting the calculated average from a value of the second pixel data corresponding to the second pixel, and subsequent to said transforming and said pre-emphasizing, compressing the pre-emphasized, transformed mosaiced image data with a mathematically lossy wavelet compression to generate the compressed mosaiced image data. The memory device has a non-transitory computer readable storage media supported by the housing and in communication with the communication interface. The non-transitory computer readable storage media is configured to store the compressed mosaiced image data at a frame rate of at least about 23 frames per second.

47. Thus, at least claim 7 of the ‘385 patent reads on the JinniMag memory devices.

48. Jinni Tech is on at least constructive notice of RED’s patent, Despite said or constructive knowledge, Jinni Tech continues to infringe RED's patent rights. On information and belief, such infringement by Jinni Tech has been willful and wanton.

49. Upon information and belief, Defendants’ infringement of the ‘385 patent will continue unless enjoined by this Court to the great and irreparable injury of RED, for which RED has no adequate remedy at law unless Jinni Tech is enjoined by this court. Accordingly, RED seeks a preliminary and permanent injunction enjoining Jinni Tech from making, using, importing, offering to sell and/or selling its JinniMag memory devices.

50. RED is informed and believes and thereupon alleges that the sale of Jinni Tech’s unauthorized, infringing JinniMag memory devices has resulted in lost

sales, reduced the business and profit of RED, and greatly injured the general reputation of RED, all to RED's damage in an amount not yet fully determined. The exact amount of profits realized by Jinni Tech as a result of its infringing activities, are presently unknown to RED, as are the exact amount of damages suffered by RED as a result of said activities. These profits and damages cannot be accurately ascertained without an accounting. Pursuant to 35 U.S.C. § 284, RED is also entitled to an increase of damages up to three times the amount found or assessed at least due to Defendants' willful and deliberate infringement. And, because Defendants' infringement presents an exceptional case, RED is also entitled to an award of its attorneys' fees under 35 U.S.C. § 285.

51. Jinni Tech is a competitor of RED. Jinni Tech sells its JinniMag memory devices in the same channels as RED. Jinni Tech's unauthorized, infringing sales are likely to cause irreparable harm to RED, which cannot be compensated by damages. Accordingly, RED seeks a preliminary and permanent injunction enjoining Jinni Tech from making, using, offering to sell and selling its JinniMag memory devices.

## SECOND CLAIM FOR RELIEF

## Trademark Infringement Under 15 U.S.C. § 1114

52. The allegations of paragraphs 1 through 51 are repled and realleged as though fully set forth herein.

53. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1114 against Defendants, jointly and severally. Jurisdiction is founded upon 15 U.S.C. § 1121.

54. RED is the owner of U.S. Registered Trademark No. 3,732,638, which confers the exclusive right to use this trademark in commerce. A true and correct copy of U.S. Registered Trademark No. 3,732,638 is attached hereto as Exhibit 2.

55. The mark has been in use in commerce in connection with the sale of RED digital camera accessories continuously since at least as early as its date of issue. The mark appears clearly on packaging, advertisements, product brochures, and on products.

56. Defendants, through their agents, employees and servants, has manufactured, imported, advertised, offered for sale, and/or sold products embodying this registered mark without authority from RED for doing so. Specifically, Defendants are marketing, advertising, offering to sell, and selling its RED camera accessories with prolific reference and incorporation of "RED" which Plaintiff believes infringes its rights in the registered trademark.

57. RED is informed and believes, and thereupon alleges, that Defendants are using "RED" in the keywords for one or more of its websites. By unlawfully using this mark in the keyword metatags, Defendant is creating initial interest confusion. This confusion is intended to draw internet traffic to Defendant's website. Defendant benefits from this traffic by way of additional advertising and other revenues.

58. RED is informed and believes, and thereupon alleges, that Defendants spoofed the connection between Defendant's product and RED cameras. In particular, when a JinniMag 480GB card is placed in a RED camera, it registers as a "RED" card, creating the impression to both the camera and the user that the JinniMag card is compatible with the RED camera, when in fact it is not.

59. Plaintiff is informed and believes, and thereupon alleges, that Defendants' use of RED's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendant's advertising and products originated from or somehow are authorized by RED.

60. Plaintiff is informed and believes, and thereupon alleges, that Defendants' unauthorized use of RED's registered mark has caused confusion in the

marketplace as to the source of origin of Defendant's products and has caused damage to RED within this jurisdictional district.

61. Plaintiff is informed and believes, and thereupon alleges, that Defendants willfully infringed upon RED's exclusive rights under its trademark with the intent to trade upon the good will of RED and to injure RED.

62. Plaintiff is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

63. Plaintiff is informed and believes, and thereupon alleges, that Defendants will continue to infringe the registered trade dress to the great and irreparable injury of RED, for which RED has no adequate remedy at law unless Defendant is enjoined by this court.

64. Plaintiff has been damaged in this judicial district as a result of the Defendants' infringement of its registered mark.

**THIRD CLAIM FOR RELIEF**

**Trademark Infringement Under 15 U.S.C. § 1114**

65. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

66. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1114 against Defendants, jointly and severally. Jurisdiction is founded upon 15 U.S.C. § 1121.

67. RED is the owner of U.S. Registered Trademark No. 5,009,473, which confers the exclusive right to use this trademark in commerce to the mark RED RAVEN. A true and correct copy of U.S. Registered Trademark No. 5,009,473 is attached hereto as Exhibit 3.

68. The mark has been in use in commerce in connection with the sale of RED digital camera accessories continuously since at least as early as its date of issue. The mark appears clearly on packaging, advertisements, product brochures, and on products.

69. Defendants, through their agents, employees and servants, has manufactured, imported, advertised, offered for sale, and/or sold products embodying this registered mark without authority from RED for doing so. Specifically, Defendant is marketing, advertising, offering to sell, and selling its RED camera accessories with prolific reference and incorporation of "RED RAVEN" which Plaintiff believes infringes its rights in the registered trademark.

70. Plaintiff is informed and believes, and thereupon alleges, that Defendants' use of RED's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendant's advertising and products originated from or somehow are authorized by RED.

71. Plaintiff is informed and believes, and thereupon alleges, that Defendants' unauthorized use of RED's registered mark has caused confusion in the marketplace as to the source of origin of Defendants' products and has caused damage to RED within this jurisdictional district.

72. Plaintiff is informed and believes, and thereupon alleges, that Defendants willfully infringed upon RED's exclusive rights under its trademark with the intent to trade upon the good will of RED and to injure RED.

73. Plaintiff is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

74. Plaintiff is informed and believes, and thereupon alleges, that Defendants will continue to infringe the registered trade dress to the great and

irreparable injury of RED, for which RED has no adequate remedy at law unless Defendant is enjoined by this court.

75. Plaintiff has been damaged in this judicial district as a result of the Defendants' infringement of its registered mark.

## FOURTH CLAIM FOR RELIEF

## Trademark Infringement Under 15 U.S.C. § 1114

76. The allegations of paragraphs 1 through 75 are repled and realleged as though fully set forth herein.

77. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1114 against Defendants, jointly and severally. Jurisdiction is founded upon 15 U.S.C. § 1121.

78. RED is the owner of U.S. Registered Trademark No. 4,645,757, which confers the exclusive right to use this trademark in commerce for the mark RED mini-mag. A true and correct copy of U.S. Registered Trademark No. 4,645,757 is attached hereto as Exhibit 4.

79. The mark has been in use in commerce in connection with the sale of RED digital camera accessories continuously since at least as early as its date of issue. The mark appears clearly on packaging, advertisements, product brochures, and on products.

80. Defendants, through their agents, employees and servants, has manufactured, imported, advertised, offered for sale, and/or sold products embodying this registered mark without authority from RED for doing so. Specifically, Defendants are marketing, advertising, offering to sell, and selling its RED camera accessories with prolific reference and incorporation of "RED mini-mag" which Plaintiff believes infringes its rights in the registered trademark.

81. RED is informed and believes, and thereupon alleges, that Defendants are using "red mini-mag" in the keywords for one or more of its websites. By

unlawfully using this mark in the keyword metatags, Defendants are creating initial interest confusion. This confusion is intended to draw internet traffic to Defendants' website. Defendants benefit from this traffic by way of additional advertising and other revenues.

82. Plaintiff is informed and believes, and thereupon alleges, that Defendants' use of RED's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products originated from or somehow are authorized by RED.

83. Plaintiff is informed and believes, and thereupon alleges, that Defendants' unauthorized use of RED's registered mark has caused confusion in the marketplace as to the source of origin of Defendants' products and has caused damage to RED within this jurisdictional district.

84. Plaintiff is informed and believes, and thereupon alleges, that Defendant willfully infringed upon RED's exclusive rights under its trademark with the intent to trade upon the good will of RED and to injure RED.

85. Plaintiff is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

86. Plaintiff is informed and believes, and thereupon alleges, that Defendants will continue to infringe the registered trade dress to the great and irreparable injury of RED, for which RED has no adequate remedy at law unless Defendant is enjoined by this court.

87. Plaintiff has been damaged in this judicial district as a result of the Defendants' infringement of its registered mark.

## FIFTH CLAIM FOR RELIEF

### Trademark Infringement Under 15 U.S.C. § 1114

88. The allegations of paragraphs 1 through 87 are repled and realleged as though fully set forth herein.

89. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1114 against Defendants, jointly and severally. Jurisdiction is founded upon 15 U.S.C. § 1121.

90. RED is the owner of U.S. Registered Trademark No. 4,656,645, which confers the exclusive right to use this trademark in commerce for RED MINI-MAG. A true and correct copy of U.S. Registered Trademark No. 4,656,645 is attached hereto as Exhibit 5.

91. The mark has been in use in commerce in connection with the sale of RED digital camera accessories continuously since at least as early as its date of issue. The mark appears clearly on packaging, advertisements, product brochures, and on products.

92. Defendants, through their agents, employees and servants, has manufactured, imported, advertised, offered for sale, and/or sold products embodying this registered mark without authority from RED for doing so. Specifically, Defendants are marketing, advertising, offering to sell, and selling its RED camera accessories with prolific reference and incorporation of "RED Mini-Mag" which Plaintiff believes infringes its rights in the registered trademark.

93. RED is informed and believes, and thereupon alleges, that Defendant is using "red mini-mag" in the keywords for one or more of its websites. By unlawfully using this mark in the keyword metatags, Defendants are creating initial interest confusion. This confusion is intended to draw internet traffic to Defendants' website. Defendants benefit from this traffic by way of additional advertising and other revenues.

94. Plaintiff is informed and believes, and thereupon alleges, that Defendants' use of RED's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products originated from or somehow are authorized by RED.

95. Plaintiff is informed and believes, and thereupon alleges, that Defendant's unauthorized use of RED's registered mark has caused confusion in the marketplace as to the source of origin of Defendant's products and has caused damage to RED within this jurisdictional district.

96. Plaintiff is informed and believes, and thereupon alleges, that Defendants willfully infringed upon RED's exclusive rights under its trademark with the intent to trade upon the good will of RED and to injure RED.

97. Plaintiff is informed and believes, and thereupon alleges, that Defendant have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

98. Plaintiff is informed and believes, and thereupon alleges, that Defendants will continue to infringe the registered trade dress to the great and irreparable injury of RED, for which RED has no adequate remedy at law unless Defendant is enjoined by this court.

99. Plaintiff has been damaged in this judicial district as a result of the Defendants' infringement of its registered mark.

## SIXTH CLAIM FOR RELIEF

## False Designation of Origin, Unfair Competition and False Description Under 15 U.S.C. § 1125(a)

100. The allegations of paragraphs 1 through 99 are repled and realleged as though fully set forth herein.

101. This is an action for unfair competition, false designation of origin of goods, and false description or representation of goods against Defendants, pursuant to 15 U.S.C. § 1125(a). Jurisdiction is founded upon 15 U.S.C. § 1121.

102. RED is the owner of the marks "RED," "RED RAVEN," "RED mini-mag," and "RED MINI-MAG" as evidenced by U.S. Registered Trademark Nos. 3,732,638, 5,009,473, 4,645,757, and 4,656,645, respectively, and as set forth in Exhibits 2 through 5. RED has gained great recognition in the industry and the consuming public for its product using these marks, which has been widely recognized as emanating from RED.

103. Defendants are aware of RED's use and ownership of these marks. RED is informed and believes, and thereupon alleges, that Defendant has coordinated its advertising, marketing, online marketing, images, and metatags all in an effort to create confusion and benefit from the use of the RED marks. Consequently, RED is informed and believes, and thereupon alleges, that Defendants intentionally coordinated advertising, marketing, online marketing, images and metatags to free ride on the goodwill and reputation of RED, creating a likelihood of confusion as to an affiliation or approval of Defendants' goods.

104. RED is informed and believes and thereupon alleges that Defendants' use of "RED," "RED RAVEN," "RED mini-mag" and "RED MINI-MAG" constitutes a false designation of origin, a false description or representation of goods, and wrongfully and falsely represents to the consuming public that the Defendant Jinni's products originated from or somehow are authorized by RED. These acts amount to utilizing a false designation of origin and a false description or representation in interstate commerce to compete unfairly with RED.

105. RED is informed and believes, and thereupon alleges, that Defendants are using "red," "red mini-mag" and "red mini mag" in the keywords for one or more of its websites. By unlawfully using this mark in the keyword metatags, Defendants are creating initial interest confusion. This confusion is intended to draw internet

traffic to Defendant's website. Defendants benefit from this traffic by way of additional advertising and other revenues.

106. RED is informed and believes, and thereupon alleges, that Defendants spoofed the connection between their product and RED cameras. In particular, when a JinniMag 480GB card is placed in a RED camera, it registers as a "RED 512" card, creating the impression to both the camera and the user that the JinniMag card is compatible with the RED camera, when in fact it is not.

107. The Defendants' acts are in violation of 15 U.S.C. § 1125(a), and will continue to the great and irreparable injury of RED unless enjoined by this Court.

108. RED is informed and believes, and thereupon alleges, that Defendants' unauthorized use of the RED marks has caused confusion, or is likely to cause confusion, in the marketplace as to the source of origin of Defendants' products and has caused damage to RED within this jurisdictional district.

109. RED is informed and believes, and thereupon alleges, that Defendants willfully infringed upon RED's exclusive rights under its trademark with the intent to trade upon the good will of RED and to injure RED.

110. RED is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

111. RED is informed and believes, and thereupon alleges, that Defendants will continue to infringe RED's marks to the great and irreparable injury of RED, for which RED has no adequate remedy at law unless Defendants are enjoined by this court.

112. RED has been damaged in this judicial district as a result of the Defendants' infringement of its trademark.

## SEVENTH CAUSE OF ACTION

## False Advertising Under 15 U.S.C. § 1125

113. The allegations of paragraphs 1 through 112 are repled and realleged as though fully set forth therein.

114. This is a claim for false advertising under 15 U.S.C. § 1125(a) against Defendants, jointly and severally, arising from their marketing and advertising. Defendants knowingly engaged in false advertising as it relates to RED in an effort to bolster sales of Jinni's own products. Jurisdiction is proper under 28 U.S.C. § 1331.

115. Jinni advertises, markets and claims that "JinniMag is a high quality, high capacity, third party RED® media that is ***fully compatible with RED® Mini-Mag®*** but comes for a fraction of the price of its RED® counterpart and ***exceeds its capabilities in many aspects***."

116. Defendant Jinni also declares on its website that its JinniMag product: "***100 per cent compatibility*** means not change in your work flow, whatsoever!"

117. Defendant Jinni also claims in marketing and advertising that "JinniMag is ***fully compatible*** with whatever camera that works with RED® Mini-Mag."

118. These statements are false. The JinniMag device is not "fully compatible" or "100% compatible" with the RED Mini-Mag, and it certainly does not exceed the capabilities "in many aspects." In fact, with regard to one of the most critical aspects, namely its recording ability, it is far inferior to the RED Mini-Mag. Specifically, the JinniMag does not sustain write performance across the entire SSD due to its Dynamic Write Acceleration feature. In particular, the JinniMag 480GB drive drops frames and produces an error at approximately 60% of full. Even at restart thereafter, the SSD appears to drop frames within another 10GB, and occur even after reducing the data rate, which is not desirable in any production. The following test data confirms the actual failed writing of the JinniMag 480GB drive.

119. Similarly, Defendants also markets and advertises the superiority of its product stating that it handles "the very demanding data rate of the REDCODE RAW files." Defendant Jinni also states that the JinniMag product "uses the best components in terms of speed" and is "blazing fast." In fact, the JinniMag cannot effectively handle REDCODE files and is not blazing fast, as set forth above. The drive crashes at high record speeds, apparently losing data.

120. Defendants are marketing and advertising its products as being made in the United Kingdom, implying a greater quality than other products. On its website, Defendant Jinni declares of its products: "***Quality product made in the United Kingdom!***" However, in much smaller (barely legible print) it also adds: "Industrial design, electronic concepts and designs, PCB fabrication, PCB Assembly, Natural-Cool body design and manufacturing, toolmaking and machining, programming, finishing, plating and anodizing, painting and printing and product assembly done in the UK. Materials and electronic components sourced from the UK Suppliers. ***SSD cells and other components imported.***"

121. By their own admission, Defendants admit that their products are not actually "made in the United Kingdom." In fact, RED is informed and believes, and thereupon alleges, that the JinniMag 480GB drive incorporate Crucial MX200 mSATA SSD 500GB cards, which are made in Singapore.

122. All these statements were made in commerce, and in fact are not true.

123. As a result of all the false advertising by Defendants, RED has been injured in an amount to be proven at trial. RED seeks damages, disgorgement, restitution, and injunctive relief related to Defendants' acts. Further, unless and until enjoined by this Court, the Defendants have shown a complete disregard for the rights of RED and injuries they cause to RED. Consequently, RED seeks a preliminary and permanent injunction enjoining Defendants from making the same or similar statements.

## EIGHTH CAUSE OF ACTION

### False Advertising Under Cal. Business & Professions § 17500

124. The allegations of paragraphs 1 through 123 are repled and realleged as though fully set forth therein.

125. This is a claim for false advertising under California Business & Professions Code § 17500 *et seq.* against Defendants, jointly and severally. Jurisdiction is proper under 28 U.S.C. § 1367.

126. Defendants knowingly engaged in false advertising as it relates to RED to bolster the affiliation and ultimately the sales of JinniMag products upon launch.

127. Defendants advertise, market and claim that "JinniMag is a high quality, high capacity, third party RED® media that is ***fully compatible with RED® Mini-Mag***® but comes for a fraction of the price of its RED® counterpart and ***exceeds its capabilities in many aspects***."

128. Defendants also declare on their website that their JinniMag product: "***100 per cent compatibility*** means not change in your work flow, whatsoever!"

129. Defendant Jinni also claims in marketing and advertising that "JinniMag is ***fully compatible*** with whatever camera that works with RED® Mini-Mag."

130. These statements are false. The JinniMag device is not "fully compatible" or "100% compatible" with the RED Mini-Mag, and it certainly does not exceed the capabilities "in many aspects." In fact, with regard to one of the most critical aspects, namely its recording ability, it is far inferior to the RED Mini-Mag. Specifically, the JinniMag does not sustain write performance across the entire SSD due to its Dynamic Write Acceleration feature. In particular, the JinniMag 480GB drive drops frames and produces an error at approximately 60% of full. Even at restart thereafter, the SSD appears to drop frames within another 10GB, and occur even after reducing the data rate, which is not desirable in any production. The following test data confirms the actual failed writing of the JinniMag 480GB drive.

131. Similarly, Defendants also markets and advertises the superiority of their product stating that it handles "the very demanding data rate of the REDCODE RAW files." Defendants also state that the JinniMag product "uses the best components in terms of speed" and is "blazing fast." In fact, the JinniMag cannot effectively handle REDCODE files and is not blazing fast, as set forth above. The drive crashes at high record speeds, apparently losing data.

132. Defendants are marketing and advertising its products as being made in the United Kingdom, implying a greater quality than other products. On its website, Defendant Jinni declares of its products: "***Quality product made in the United Kingdom!***" However, in much smaller (barely legible print) it also adds: "Industrial design, electronic concepts and designs, PCB fabrication, PCB Assembly, Natural-Cool body design and manufacturing, toolmaking and machining, programming, finishing, plating and anodizing, painting and printing and product assembly done in the UK. Materials and electronic components sourced from the UK Suppliers. ***SSD cells and other components imported.***"

133. By their own admission, Defendants admit that their products are not actually "made in the United Kingdom." In fact, RED is informed and believes, and thereupon alleges, that the JinniMag 480GB drive incorporate Crucial MX200 mSATA SSD 500GB cards, which are made in Singapore.

134. All these statements were made in commerce, and in fact are not true.

135. As a result of all the false advertising by Defendants, RED has been injured in an amount to be proven at trial, but believed to be in excess of $75,000. RED seeks damages, disgorgement, restitution, and injunctive relief related to Defendants' acts. Further, unless and until enjoined by this Court, the Defendants have shown a complete disregard for the rights of RED and injuries they cause to RED. Consequently, RED seeks a preliminary and permanent injunction enjoining Jinni making the same or similar statements.

**NINTH CAUSE OF ACTION**

**False Advertising And Unfair Competition Under 15 U.S.C. § 1125**

136. The allegations of paragraphs 1 through 135 are repled and realleged as though fully set forth herein.

137. This is a claim against both Defendant for false advertising and unfair competition under 15 U.S.C. § 1125. This claim arises from Defendant's false advertising statements, which it undertook to bolster the affiliation and ultimately the sales of JinniMag products upon launch.

138. Jinni advertises, markets and claims that "JinniMag is a high quality, high capacity, third party RED® media that is ***fully compatible with RED® Mini-Mag®*** but comes for a fraction of the price of its RED® counterpart and ***exceeds its capabilities in many aspects***."

139. Defendant declare on its website that its JinniMag product: "***100 per cent compatibility*** means not change in your work flow, whatsoever!"

140. Defendants also claim in marketing and advertising that "JinniMag is ***fully compatible*** with whatever camera that works with RED® Mini-Mag."

141. These statements are false. The JinniMag device is not "fully compatible" or "100% compatible" with the RED Mini-Mag, and it certainly does not exceed the capabilities "in many aspects." In fact, with regard to one of the most critical aspects, namely its recording ability, it is far inferior to the RED Mini-Mag. Specifically, the JinniMag does not sustain write performance across the entire SSD due to its Dynamic Write Acceleration feature. In particular, the JinniMag 480GB drive drops frames and produces an error at approximately 60% of full. Even at restart thereafter, the SSD appears to drop frames within another 10GB, and occur even after reducing the data rate, which is not desirable in any production. The following test data confirms the actual failed writing of the JinniMag 480GB drive.

142. Similarly, Defendants market and advertise the superiority of their product stating that it handles "the very demanding data rate of the REDCODE RAW

files." Defendant Jinni also states that the JinniMag product "uses the best components in terms of speed" and is "blazing fast." In fact, the JinniMag cannot effectively handle REDCODE files and is not blazing fast, as set forth above. The drive crashes at high record speeds, apparently losing data.

143. Defendants are marketing and advertising their products as being made in the United Kingdom, implying a greater quality than other products. On their website, Defendants declare of their products: "***Quality product made in the United Kingdom!***" However, in much smaller (barely legible print) it also adds: "Industrial design, electronic concepts and designs, PCB fabrication, PCB Assembly, Natural-Cool body design and manufacturing, toolmaking and machining, programming, finishing, plating and anodizing, painting and printing and product assembly done in the UK. Materials and electronic components sourced from the UK Suppliers. ***SSD cells and other components imported.***"

144. By their own admission, Defendants admit that their products are not actually "made in the United Kingdom." In fact, RED is informed and believes, and thereupon alleges, that the JinniMag 480GB drive incorporate Crucial MX200 mSATA SSD 500GB cards, which are made in Singapore.

145. All these statements were made in commerce, and in fact are not true.

146. As a result of all the activities undertaken by Defendants, RED has been injured in an amount to be proven at trial. RED seeks damages, disgorgement, restitution, and injunctive relief related to Defendants' acts. Further, unless and until enjoined by this Court, the Defendants have shown a complete disregard for the rights of RED and injuries they cause to RED. Consequently, RED seeks a preliminary and permanent injunction, enjoing the making of the same or similar statements by Defendants.

## TENTH CAUSE OF ACTION

## Unfair Competition under 15 U.S.C. § 1125(a)

147. The allegations of paragraphs 1 through 146 are repled and realleged as though fully set forth herein.

148. This is a claim against Defendants, jointly and severally, for unfair competition under 15 U.S.C. § 1125(a). Defendant engaged in a scheme to falsely market the performance of its products and benefit from the following of RED camera users, to the detriment of RED.

149. Defendants knowingly engaged in false advertising as it relates to RED to bolster the affiliation and ultimately the sales of JinniMag products upon launch. However, this advertising also damages RED because if one believes a JinniMag card is compatible with RED Mini-Mags, and they fail during a shoot, the user is likely to cease using RED cameras.

150. Defendants advertise, market and claim that "JinniMag is a high quality, high capacity, third party RED® media that is ***fully compatible with RED® Mini-Mag***® but comes for a fraction of the price of its RED® counterpart and ***exceeds its capabilities in many aspects***."

151. Defendants also declare on their website that its JinniMag product: "***100 per cent compatibility*** means not change in your work flow, whatsoever!"

152. Defendants claim in marketing and advertising that "JinniMag is ***fully compatible*** with whatever camera that works with RED® Mini-Mag."

153. These statements are false. The JinniMag device is not "fully compatible" or "100% compatible" with the RED Mini-Mag, and it certainly does not exceed the capabilities "in many aspects." In fact, with regard to one of the most critical aspects, namely its recording ability, it is far inferior to the RED Mini-Mag. Specifically, the JinniMag does not sustain write performance across the entire SSD due to its Dynamic Write Acceleration feature. In particular, the JinniMag 480GB drive drops frames and produces an error at approximately 60% of full. Even at

restart thereafter, the SSD appears to drop frames within another 10GB, and occur even after reducing the data rate, which is not desirable in any production. The following test data confirms the actual failed writing of the JinniMag 480GB drive.

154. Similarly, Defendants also market and advertise the superiority of their product stating that it handles "the very demanding data rate of the REDCODE RAW files." Defendants state that the JinniMag product "uses the best components in terms of speed" and is "blazing fast." In fact, the JinniMag cannot effectively handle REDCODE files and is not blazing fast, as set forth above. The drive crashes at high record speeds, apparently losing data.

155. Defendants is marketing and advertising its products as being made in the United Kingdom, implying a greater quality than other products. On their website, Defendants declare of their products: "***Quality product made in the United Kingdom!***" However, in much smaller (barely legible print) it also adds: "Industrial design, electronic concepts and designs, PCB fabrication, PCB Assembly, Natural-Cool body design and manufacturing, toolmaking and machining, programming, finishing, plating and anodizing, painting and printing and product assembly done in the UK. Materials and electronic components sourced from the UK Suppliers. ***SSD cells and other components imported.***"

156. By their own admission, Defendants admit that their products are not actually "made in the United Kingdom." In fact, RED is informed and believes, and thereupon alleges, that the JinniMag 480GB drive incorporate Crucial MX200 mSATA SSD 500GB cards, which are made in Singapore.

157. Further, the cards are created by Jinni in a way so as to appear to actually be RED cards, given their description and interaction with a RED camera.

158. All the acts together constitute unfair competition and false advertising under 15 U.S.C. § 1125(a). The deception and false statements occurred in a course of commerce. Defendants' business practices address the market generally and implicate consumer protection concerns.

159. As a consequence of their deceptive business practices, Defendants have profited in an amount that is yet to be determined. Further, as a direct result of Defendants' actions, RED has been injured in an amount that it yet to be determined, but will be proven at trial. Defendants should be required to account for and disgorge any profits from their unjust enrichment resulting from their deceptive business practices, as set forth above, and compensate RED for its damages. Further, the Court should issue and injunction prohibiting Defendants from their continued course of deceptive business practices.

**ELEVENTH CLAIM FOR RELIEF**

**Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

160. The allegations of paragraphs 1 through 159 are repled and realleged as though fully set forth at this point.

161. The foregoing conduct and actions of Defendants constitute unfair competition under California Business & Professions Code § 17200 *et seq.* Jurisdiction is proper under 28 U.S.C. § 1367.

162. Defendants have attempted to injure, and have injured, the reputation and goodwill of RED by their false statements, spoofing of RED products, and acts of trademark infringement.

163. Plaintiff has no adequate remedy at law because Defendants are injuring their reputation and goodwill through the broad use of several internet outlets. Damages alone cannot fully compensate Plaintiff for the unlawful acts given the numerous website hits and breadth of distribution of the publications.

164. Unless enjoined by this Court, Defendants will continue to engage in statutory unfair competition to Plaintiff's irreparable individual injuries. Injunctive relief is required to prevent the Defendants' continued misconduct and to ameliorate and mitigate Plaintiffs' injuries.

## TWELFTH CAUSE OF ACTION
## Unjust Enrichment

165. The allegations of paragraphs 1 through 164 are repled and realleged as though fully set forth herein.

166. This is a common law cause of action for unjust enrichment against Defendants, jointly and severally. Jurisdiction is proper under 28 U.S.C. § 1367.

167. Defendants' false marketing of its products is designed to ensure that their falsely labeled, exaggerated and misrepresented qualities capture a portion of the market for recording media for RED camera, and therefore benefit Defendants at the expense of competitors, such as RED. Defendants' actions confer a benefit to them, at the expense of RED.

168. Defendants' false advertising violates principles of justice, equity and good conscience. Such acts have caused Defendants to be unjustly enriched to the detriment of RED.

169. As a result of the unjust enrichment of Defendants, RED seeks an accounting and disgorgement from the Defendants equal to their profits from their sale of products that have been falsely advertised, as set forth above.

## THIRTEENTH CAUSE OF ACTION
## Breach of Contract

170. The allegations of paragraphs 1 through 169 are repled and realleged as though fully set forth herein.

171. This is a breach of contract claim against Defendant Royce. Jurisdiction is proper under 28 U.S.C. § 1367.

172. Defendant Royce is a RED customer, having purchased at least one RED camera. As part of RED's Terms & Conditions of Sale, which all purchasers must review and accept prior to purchase, Royce agreed to the following term:

> "Buyer will not cause or permit the modification or reverse engineering of file formats, tools, or image processing of RED products without express written consent form RED. Buyer will not develop tools from RED products or use non-RED approved tools, products or software with RED products without express written consent from RED. Buyer will not cause or permit any reverse engineering or RED products."

173. Royce breached this term of the agreement. RED is informed and believes, and thereupon alleges, that Royce facilitated and/or was instrumental in developing the JinniMag device and enabling it to engage with RED cameras. RED is further informed and believes, and thereupon alleges, that Royce spoofed strings of code, copied code, or otherwise modified tools and products to record with the RED cameras, all without any authority or approval by RED.

174. As a direct result of Royce's actions, RED suffered direct and consequential damages in an amount to be determined at trial, but believed to be in excess of $75,000.

WHEREFORE, Plaintiff Red.com, Inc. prays as follows:

1. That Defendants, jointly and severally, be adjudicated to have infringed RED's U.S. Patent No. 9,596,385, and that the patent is valid and enforceable and is owned by RED;
2. That Defendants, their agents, servants, employees, and attorneys and all persons in active concert and participation with them, be forthwith preliminarily and thereafter permanently enjoined from making, using, importing, offering to sell or selling any cameras that infringe United States Patent No. 9,596,385;
3. That Defendants be required to account to RED for any and all profits derived by them associated with their sale of the JinniMag device, and

all damages sustained by RED by reason of Defendants' patent infringement;

4. For an assessment and award of patent damages against Defendants in an amount no less than lost profits or a reasonable royalty, pursuant to 35 U.S.C. § 284;
5. For an order requiring Defendants to deliver up and destroy all infringing JinniMag devices;
6. That the Defendants be adjudicated to have infringed RED's U.S. Trademark Registration No. 3,732,638 , and that said trademark is enforceable and owned by RED;
7. That the Defendants be adjudicated to have infringed RED's U.S. Trademark Registration No. 5,009,473, and that said trademark is enforceable and owned by RED;
8. That the Defendants be adjudicated to have infringed RED's U.S. Trademark Registration No. 4,645,757, and that said trademark is enforceable and owned by RED;
9. That the Defendants be adjudicated to have infringed RED's U.S. Trademark Registration No. 4,656,645, and that said trademark is enforceable and owned by RED;
10. That Defendants, their agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant, be forthwith preliminary and thereafter permanently enjoined from infringing RED's U.S. Trademark Registration Nos. 3,732,638, 5,009,473, 4,645,757, and 4,656,645;
11. For an assessment and award of damages against Defendants, jointly and severally, under 15 U.S.C. § 1117, in an amount no less than RED's lost profits, Defendants' profits or a reasonable royalty for Defendants'

infringement of RED's U.S. Trademark Registration Nos. 3,732,638, 5,009,473, 4,645,757, and 4,656,645;

12. For an assessment and award of damages against Defendants, jointly and severally, in an amount no less than the damages RED suffered as a result of unfair competition and marketing, under 15 U.S.C § 1125(a), and a reasonable amount to allow RED to undertake corrective marketing;

13. For an order of preliminary and permanent injunction prohibiting Defendants from engaging in false advertising and requiring Defendants to engage in mitigating and corrective advertising;

14. That an award of reasonable costs, expenses, and attorneys' fees be awarded against Defendant pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1116(a);

15. That a preliminary and permanent injunction be entered, prohibiting Defendants from engaging in false advertising, and requiring Defendants to engage in mitigating and corrective advertising;

16. That RED be awarded statutory and compensatory damages reasonably calculated to compensate it for its losses arising from Defendants' false advertising, including lost profits and lost goodwill caused by Defendants wrongful acts;

17. That RED be awarded restitution for Defendants' acts of unfair competition;

18. That RED be awarded direct and consequential damages arising from Defendant Royce's breach of contract;

19. That RED be awarded the amount of the benefit conferred on the Defendants, equal to a disgorgement of all Defendants' profits, as a result of their unjust enrichment and bad acts;

20. That Defendant be directed to file with this court and serve upon RED within 30 days after the service of the injunction, a report in writing under oath, setting forth in detail the manner and form in which Jinni have complied with the injunctions requested herein; and

21. For such other relief as the Court may deem appropriate at law or equity.

DATED: March 2, 2017 WEEKS NELSON

*/s/ Gregory K. Nelson*
Gregory K. Nelson
Attorney for Plaintiff, Red.com, Inc.

JURY DEMAND

Plaintiff Red.com, Inc. hereby requests a trial by jury in this matter.

DATED: March 2, 2017 WEEKS NELSON

*/s/ Gregory K. Nelson*
Gregory K. Nelson
Attorney for Plaintiff, Red.com, Inc.